**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION**

JOHN DOE (1968-1990)

      Plaintiff,

VS.

THE UNIVERSITY OF MICHIGAN & THE REGENTS OF UNIVERSITY OF MICHIGAN (in their individual and official capacities),

      Jointly and Severally,
      Defendants,

Case No.
Hon.

_____/

Timothy E. McDaniel (P36336)
Darryl W. Eason (P54991)
1601 Briarwood Circle, Ste. 400
Ann Arbor, MI 48108
Phone: (734) 223-7412
Phone: (313) 561-8600
Email: attytimcdaniel@gmail.com
Email: dwe014@gmail.com
*Attorneys for Plaintiff*

_____/

**COMPLAINT AND JURY DEMAND**

NOW COME Plaintiff, JOHN DOE (1968-1990) and through their attorneys, Timothy E. McDaniel and Darryl W. Eason and for their complaint against the University of Michigan ("U of M") and the Regents of the University of Michigan ("Regents") collectively referred to as "Defendants" state as follows:

## I.      INTRODUCTION

1. U of M employed Dr. Robert Anderson ("Anderson") as a physician by U of M from 1966 until 2003.

1

2.   While employed at U of M and while acting in his capacity as an employee/agent/ representative/fiduciary of U of M, Anderson sexually assaulted, battered, molested, and harassed his patients, including Plaintiff under the guise of medical treatment.

3.   Anderson used his position of trust and authority to abuse patients, students, non-students, and student athletes over the course of his nearly four-decade career with U of M.

4.   Based on the information and beliefs, as early as 1968, U of M became aware of Anderson's above mention actions after receiving complaints that Anderson committed sexual assault during medical examinations.

5.   After receiving additional complaints that Anderson was sexually assaulting patients in 1979 U of M moved Anderson from his position within university health services ("UHS").

6.   On information and belief, instead of terminating/disciplining/investigating Anderson and or reporting his behavior to the proper authorities, U of M moved Anderson to the athletic department where he continued to sexually assault patients and students until his retirement in 2003.

7.   After moving Anderson from the UHS, U of M also provided Anderson access to the sexually assaulted students/non-students through the U of M Health System in various positions including at the East Ann Arbor Health Care Facility and to provide clinical instruction at the U of M Medical School.

8.   Anderson's abuse was so prevalent and open that he even earned the nickname "Dr. Drop Your Drawers" among student athletes.

9.   U of M concealed Anderson's past, present, and future sexual abuse of vulnerable patients, students and student athletes from the public for the benefit of U of M and to the detriment of its student body and the community at large.

10. U of M's placement of Anderson into the Athletic Department, gave him access to a continuous supply of vulnerable students and non-students, including Plaintiff.

11. Student athletes were encouraged to see Anderson for physical and other medical treatment related to their collegiate athletic careers/eligibility and overall physical health. Other U of M employees were also encouraged to see Anderson for physical and other medical needs at no cost.

12. Plaintiff relied on U of M and its representations as a provider of world class medical care ("The Michigan Difference") when they sought treatment from Dr. Anderson employee/agent/representative/fiduciary of U of M.

13. U of M had direct knowledge of Dr. Anderson's sexual assault and turned a blind eye to them resulting in direct harm to Plaintiff.

14. U of M is responsible for the Plaintiff's damages resulting from Dr. Anderson sexual assault, abuse, harassment, battery, molestation, and nonconsensual touching.

15. This is civil action against U of M and Regents for declaratory, injunctive, equitable, monetary relief for injuries sustained by Plaintiff as a result of the Defendants acts and admissions in their official capacity and their respective employees, representatives, and agents relating to sexual assault, abuse, harassment, battery, molestation, and nonconsensual touching against Plaintiff.

16. Plaintiff filed this case anonymously and under pseudonyms because it is a case involving sensitive matters including sexual assault and the lawsuit will require disclosure of information of the utmost intimacy. Plaintiffs are entitled protect their identities by not disclosing their names in this public filing. *Doe vs Porter*, 360 F.3d 558, 560 (6th Circuit 2004) citing *Doe v. Stegall*, 653 F.2d 180,185-86 (5th Cir. 1981).

## II.      JURISDICTION AND VENUE

17. This court has subject matter jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising from the Constitution, laws, and treaties of the United States, including but not limited to, Title IX of the Educational Amendments of 1972, 20 U.S.C § 1681, *et seq*., and the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

18. This Court has original subject matter jurisdiction under 28 U.S.C. § 1343 as this is a civil action authorized by law brought by a person to redress deprivation, under color of a State Law, statue, ordinance, regulation, custom or usage, of a right, privilege or immunity secured by the constitution of the United States or by an act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and a civil action to recover damages or to secure equitable relief under an Act of Congress providing for the protection of civil rights.

19.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within their original jurisdiction of this Court that they form part of the same case or controversy.

20. The claims are cognizable under the United States Constitution, U.S.C. § 1983, 20 U.S.C § 1681 *et seq*., and under Michigan Law.

21.  The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

22.  The events giving rise to this lawsuit occurred in Washtenaw County, in the State of Michigan, which is located in the Southern Division of the Eastern District of Michigan.

23. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the United States District Court of the Eastern District of Michigan, as this is the district in which the events giving rise to claims in this Complaint occurred.

24.  Plaintiff's Complaint is timely filed within the applicable statues of limitations and under

M.C.L § 600.6431(3).

### III.      PARTIES

25. Plaintiff John Doe (1968-1990)  is a resident of the State of Michigan.

26. Defendant U of M is a public university organized and existing under the laws of the State of

Michigan.

27.  U of M receives federal financial assistance and therefore is subject to Title IX of the

Education Amendments of 1972 20 U.S.C. §   1681(a).

28.  Defendant Regents of the University of Michigan is a body corporate, with the right to be

sued, vested with the government of the university, M.C.L § 390.3 and 390.4.

29. Regents are responsible for governing the University of Michigan as a whole including, but

not limited to UHS, the U of M Health System, and the Athletic Department.

30. Defendants are not immune from suit under the Governmental Tort Liability Act, M.C.L. §

691.1401, *et seq*., sovereign immunity, or any other statute or Michigan or United States

constitutional provision.

### IV. COMMON FACTUAL ALLEGATIONS

31. Plaintiff realleges and incorporate by reference the allegations contained in Paragraphs 1-30

above as if stated herein.

32. From 1966-2003 Anderson was employed as a physician treating students, non-students, and

student athletes on U of M's campus.

33. U of M provided Anderson with a pool of vulnerable patients for Anderson to treat with

impunity through U of M's health system and Athletic Department.

34. On information and belief, U of M hired Anderson in September of 1966 where he held a position with UHS giving medical care to student athletes, students, and non-students.

35. It was sometime soon after beginning employment with U of M that, according to Ambassador Ron Wiser, current chair of the U of M Board of Regents, Anderson abused Ambassador Weiser while Weiser was a freshman wrestler at U of M.

36. On or about October 1, 1968, U of M promoted Anderson to UHS Director, and Anderson continued as the Athletic Department's primary care physician and team physician for U of M's athletic teams.

37. In 1968 or 1969, a U of M undergraduate student ("hereinafter Student 1"), went for an examination with Anderson, that he later described to The Detroit News as "very traumatic" and during which he stated that, he Anderson had me drop my pants, he felt my penis and genitals, is subsequently, he Anderson wanted me to feel his Anderson's penis Ann genitals.

38. Student 1 further stated that back then you did not question a doctor's authority … he asked me to pull on his penis."

39. Student 1 filed a written complaint with UHS, detailing that Anderson had dropped his pants and asked student want to find all his genitals.

40. Despite this significant red flag, no one from U of M followed up with Student 1 and no one investigated the complaint against Anderson.

41. Uninformed nation and belief, you will never investigate it or took any action regarding student one complaint.

42. In 1973, Anderson fondled the genitals of another undergraduate men to the point of ejaculation.  The student reported this incident in 1994 to the predecessor of Michigan Department of Licensing and Regulatory Affairs.

43. On information and belief, in the ordinary course of a reported sexual assault by a regulated professional, LARA would have contacted U of M as Anderson's employer. However, U of M failed to take action and continued to employ Anderson until he voluntarily retired in 2003.

44. In 1975, Bill Johannesen who was EU of M's wrestling coach, admitted that when one of his wrestlers went to Anderson, they had to drop their drawers even if the injury was to the wrestlers' elbow.

45. A scholarship athlete on U of M's wrestling team in 1975 student 2, gave notice of Anderson's sexual misconduct in a 10-page letter to coach Johannesen, complaining that something was wrong with Anderson, regardless of what you are therefore, he insists that you drop your drawers and cough."

46. Neither U of M, Coach Johannesen, nor any agents of U of M investigated Student 2's complaints about Anderson's sexual assault and instead Coach Johannesen revoke Student 2's athletic scholarship.

47. Student 2 appeal to Don Canham, the Athletic Director at the time, giving the Athletic Director notice of the allegations against Anderson, but Canham refused to take action/investigate the complaints against Anderson and upheld the wrestling coach's decision to pull Student 2's athletic scholarship.

48. Student 2 hired an attorney an appealed to U of M's Board of Intercollegiate Athletics to get his scholarship returned.

49. On information and belief, the above-mentioned board, found Student 2 to be credible and yet U of M still did nothing to prevent Anderson's sexual abuse.

50.  Another male student, ("Student 3"), who attended U of M in the 1970's filed a complaint in case 2:20 cv-10622-VAR-EAS, alleging that Anderson repeatedly groped this student's penis and testicles, and digitally penetrated his anus during approximately 25 visits to Anderson for a variety of illnesses and injuries.

51. In 1976, Student 3 approached the track coach as well as the assistant track coach and informed them about Anderson groping him during medical exams (he was too embarrassed to speak out about the digital penetration at the time).

52. Student 3 requested that he be allowed to see another physician, but were laughed off by the track coaches, who refused his request.

53. This indifference to Anderson's action by coaches and individuals in positions of authority at the University of Michigan normalized Anderson's behavior.

54. The track team had started calling Anderson "the pants down doctor" around this time.

55.  According to records from the Washtenaw County Prosecutor's Office in 1979, a then-graduate student at U of M ("Student 4") was seen by Anderson at UHS and reported that Anderson "gave undue attention to my genitals and rectal area.  It was very physical and socially uncomfortable… he inserted his finger into my rectum for a period that was longer than any other hernia or rectal evaluation."

56. Student 4 complain at UHS to the desk clerk and an administrator who both "dismissed" his complaints and had security escort Student 4 from the UHS premises.

57. Once again, with Student 4, U of M had an opportunity to do the right thing and at the very least investigate Anderson's activities but failed to do so.

58. In 1979, Anderson assaulted a Student Life employee/gay rights activist at the University by digitally penetrating him and after the employee reacted in pain Anderson stated, "I thought you would have enjoyed that!"

59. The employee told his superior and then Vice President of Student Life at U of M, Tom Easthope, that Anderson had assaulted multiple members of the gay community at the school.

60.  Easthope did some investigating into the incident and later met with the employee where he told him that he spoke with Dr. Anderson and that "He (Anderson) does not deny your allegations against him, Easthope also stated that, "Dr. Anderson is troubled, sick, and needing help… he's very sorry for any distress or upset he caused you."

61.  Vice President Easthope, who had oversight of UHS, believed the employees account that Anderson was sexually assaulting patients and terminated Anderson despite his hesitation due to Anderson's status as a "big shot" at the University.

62. After terminating Anderson, Easthope allowed Anderson the privilege of resigning his position with UHS to avoid a dispute, which could have prolonged Anderson's departure from UHS.

63. Unfortunately, according to U of M human resource records, Anderson was not actually terminated, but "demoted" effective January 14, 1980, and U of M continued to employ Anderson in positions where he had access to vulnerable patients.

64. Easthope was recently confronted about Anderson and claimed he was unaware that U of M continued to employ Anderson as a physician after 1979 and stated that "I bet there are over 100 people that could be on that list (of men abused by Anderson)."

65. Longtime U of M athletic trainer Russell Miller, believes powerful Athletic Director

Canham, a legend at U of M, "worked out a deal" to allow Anderson to continue to work for

U of M in the Athletic Department, where he continued to sexually assault patients.

66. Despite his "termination" from UHS, U of M allowed Anderson to treat patients within UHS,

until at least 1981, where he continued to molest and sexually assault students.

67.  Anderson was considered to be a highly regarded physician at U of M during his multi-

decade career and was praised by Athletic Directors, trainers, and coaches.  One longtime

coach of the U of M football coaching staff during the 1980s, 1990s, and 2000s, called

Anderson "a tremendous asset."

68. In 1980, Anderson told the Ann Arbor News that Athletic Director Canham created a brand-

new position for him as the "formal team physician."  Please See the Ann Arbor News, June

10, 1999, pg. B7.

69. Despite being well aware of Anderson's actions, U of M fraudulently an egregiously

concealed Anderson's behavior.

70. Volume III of the President's Report of THE UNIVERSITY OF MICHIGAN for 1979-1980

stated:  "The University Health Service staff wish to acknowledge the 11 years of leadership

provided by Robert E.  Anderson, M. D.  In January of 1980, Anderson resigned as Director

of the University Health Service to devote more time to his clinical field of

urology/andrology and athletic medicine… his many contributions to health care are

acknowledged…  The University Health Service staff wish to thank Anderson for his years

of leadership and to dedicate the Annual Report to him."

71. As noted above, U of M continued to praise Anderson and his termination was changed to a "demotion" in his University human resources file, despite the numerous an increasing number of abhorrent complaints against him, so he could remain a physician within the University in some capacity.

72. While under the protection U of M's leadership, Anderson used his new position within the Athletic Department to abuse hundreds of U of M male athletes including Plaintiff.

73. After the demotion to the Athletic Department, U of M continued to tout Anderson as a superstar physician, and he was praised by authority figures within the University including Athletic Director Canham.

74. Dr. Anderson was a powerful figure within the Athletic Department and the University as a whole.  He not only eluded his "termination" in 1979, but Anderson traveled with the school's heralded football team on the road, was often seen prominently standing on the sidelines with the team during football games, and Anderson received VIP treatment for the football team's end of the year bowl games.

75. U of M derives substantial revenue from its athletic programs, especially the historically successful football team, and a scandal involving its team doctor would have undoubtedly tarnished the school's reputation.

76. Outside of his position within the Athletic Department, Anderson operated a private practice and worked as a physician at U of M's East Ann Arbor Health Care facility where he also sexually assaulted patients.

77. In 1993 U of M acquired Anderson's private practice, another sign of the unprecedented support and influence Anderson had at the school.

78. Anderson remained with U of M as a clinical instructor at the U of M Internal Medicine Department until his retirement in 2003.

79. In summation:  U of M, at the very least, received complaints/warnings from patients/students that Anderson was a sexual predator in 1968, 1975 and 1976 respectively. A graduate student then complained to U of M about Anderson in 1979 and an activist/employee with Student Life inform U of M that Anderson was sexually abusing gay students in 1979.  U of M acknowledge Anderson was a sexual predator in 1979 and then "fired" Anderson, but instead of actually firing him, Anderson was simply moved to a position in the Athletic Department where he was given inconceivable access to scores of victims and where his actions and the allegations against him were actively hidden from the public.

80. Over the course of nearly four (4) decades, complaints about Anderson's sexual abuse fell on deaf ears at U of M and U of M repeatedly failed to act to protect its students and the public at large from Anderson.

81. At all relevant times Anderson maintained an office in Ann Arbor, Michigan and held himself out as a representative/agent/employee/and or affiliate/etc. of U of M.

82. At all relevant times, including from 1966-2003, Anderson was acting within the course and scope of his employment/agency with U of M.

83.  At all relevant times Athletic Director Don Canham, various coaches, and others were acting within the course and scope of their employment/agency with U of M.

84. Anderson in his capacity as a physician for U of M acted as a primary care physician for students, non-students, and student athletes including Plaintiff, who saw him for a litany of reasons ranging from cold and flu issues to broken bones.

85. U of M took no action to investigate the above-mentioned complaints from students and provided Anderson access to sexually assault patients with impunity.

86. U of M failed to take corrective action against Anderson even after Easthope tried firing him in 1979, causing severe trauma and damages to victims of Anderson for decades as a result of his sexual abuse during "medical examinations."

87. Young students and patients who saw Anderson were needlessly exposed to a sexual predator who would sexually assault, molest, and abuse patients via nonconsensual sexual touching and nonconsensual digital anal penetration.

88. Young males and male patients abused by Anderson were led to believe by those with authority, including many in U of M's administration and Anderson himself that the medical treatments they received were necessary, when in reality they were performed by Anderson to satisfy his sexual desires.

89. Despite how uncomfortable the victims were with Anderson, they did not appreciate the extent of the abuse at the time as it was normalized and downplayed by many within U of M's community.

90. Many student athlete victims faced under immense pressure to perform, which included healing quickly from injury so they could return to their field of play as quickly as possible, which usually meant seeing Anderson, the Athletic Department's "superstar."

91. U of M failed to act to protect its student body and the community at large despite having knowledge of Anderson's sexual abuse during medical examinations.

92. Because of U of M's failure to take action even with knowledge of Anderson's abuse, Plaintiff was sexually assaulted, abused, battered, molested and tormented by Anderson for twenty-two(22) years.

93. As early as 1968(when Plaintiff began his employment), U of M had notice of Anderson's sexual abuse, and Plaintiff' assaults could have/would have been prevented had U of M acted on and/or investigated any of the numerous complaints against Anderson.

94. Plaintiff's additional assaults could have and would have also been prevented if Defendants actually fired Anderson in 1979 instead of moving him to the Athletic Department and had U of M provided information to Plaintiff's or their parents regarding the numerous allegations against Anderson, wherefore Plaintiff would have likely seen a different physician.

95. U of M facilitated Plaintiff's abuse from Anderson, by failing to act and failing to warn them about allegations of Anderson's sexual abuse and failing to supervise Anderson even after U of M received credible complaints of his sexual abuse.

96. Anderson's abused Plaintiff from 1968-1990 at his office(s) within U of M and under the guise of medical treatment.

97. More recently, with allegations and complaints about Anderson coming to light, U of M continued to repeat its patterns of mishandling these allegations as it stalled its disclosure of these incidents to the public and its former students for nineteen (19) long months.

98. On July 18, 2018, a student sent a letter to current Athletic Director Warde Manuel, notifying him of Anderson sexual assaults against him when he was a student from 1972 to 1976, he notified former Athletic Director Don Canham of the same in the 1970's.

99. On information and belief, U of M requested its campus Police Department to begin a non-public investigation in response to the letter to Athletic Director Manuel, but it took no further action to address/notify former students and/or the public about the allegations, Anderson's lengthy history of sexual abuse of U of M students, and/or its investigation until compelled to do so by The Detroit News nineteen (19) months later.

100.   U of M President Schlissel admitted on February 20, 2020, "Our (U of M) police found

indications that U of M staff members were aware of rumors and allegations of misconduct

during Anderson's medical exams."

101.   At least one of U of M's Board of Regents, Regent Ron Weiser, had personal knowledge

of the allegations of sexual assault in the July 2018 letter were true.

102.    Another member of the U of M Board of Regents, Regent Paul Brown, recently stated

publicly that Anderson also sexually assaulted three members of his family when they were

students at U of M.

103.   For several years, Defendants have been under intense media, public, legal, and

governmental scrutiny regarding their mishandling of sexual harassment and sexual assaults

committed by faculty members, including, but not limited to Professor David Daniels;

several Title IX complaints by students in recent years; and complaints of sexual misconduct

and inappropriate behavior against Provost Martin Philbert.

104.   Defendants' nineteen (19) month delay in notifying the public and alumni about

Anderson's abuse of students is consistent with the pattern of U of M's recent reactions to

sexual abuse allegations mentioned above.

105.   Plaintiff was sexually abused, assaulted, harassed, molested and tormented during

medical examinations for twenty-two (22) years by Anderson in a number of ways including,

but not limited to: anal penetration, groping and manipulation of their genitals without

consent, unwanted and non-consensual touching of genitals for prolonged periods of time,

inappropriate sexual remarks, lewd sexual comments including comments about endowment

and sexual performance, inappropriate cupping of testicles, unwanted sexual touching, digital

penetration, attempted digital penetration.

106.    Each of the above-mentioned actions of Anderson against Plaintiff were not done for a

medical purpose, but for Anderson's own sexual pleasure.

107.    Plaintiff relied on U of M and its agents/employees/administration etc., who

pushed/encouraged them to treat with Anderson through UHS and the U of M Health System

and Athletic Department.

108.    Plaintiff chose to work for U of M for in part due to its national reputation as the leaders

and the best, as stated in the school's fight song and echo by alumni and fans of the

University.

109.    U of M offered Plaintiff affordable and/or free healthcare which made Anderson service

costs effective and readily available.

110.    Plaintiff trusted U of M and their agents, representatives, administrators, and employees

who encouraged them to seek healthcare and treatment through UHS and the U of M Health

System and touted Anderson as an exceptional Doctor.

111.    Plaintiff never saw Anderson for injuries to their genitals or anus and at no point

complained about issues with those body parts.

112.    Plaintiff as ignorant to the fact that Anderson's treatments were for his own criminal

sexual intentions and that U of M knew of Anderson's behavior actions an intentionally

wantonly gave a sexual predator access to abuse Plaintiff and other male patients.

113.    Anderson sexual abuse took place on U of M's property and on campus and Plaintiff

trusted that the medical examinations they received through U of M by Anderson where

legitimate and necessary medical examinations for the purpose of treatment/diagnosis.

114.    Plaintiff also trusted Anderson as a medical professional and authority figure within U of

M.

16

115.    As U of M students, Plaintiff had no medical training or experience and were not aware
that Anderson's treatment was actually sexual assault, abuse, and molestation.

116.    Plaintiff experienced shame, embarrassment, and discomfort in processing their assault at
the hands of Anderson under the guise of medical treatment and fear coming forward about
their experience until recently.

117.    Plaintiff developed an inherent distrust of doctors and medical professionals after
Anderson's assaults.

## V. PLAINTFFS' SPECIFIC FACTUAL ALLEGATIONS

118.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-
117 above as if stated herein.

119.    Plaintiff John Doe (1968-1990) is a 79-year-old resident of Michigan

120.    John Doe (1968-1990) worked for the University of Michigan from 1968-1986 and
continued treating with Anderson, his primary care physician, until 1990.

121.    Plaintiff John Doe (1968-1990)saw Anderson as his primary care physician numerous
times from 1968-1990 for a range of issues including annual physicals/well visits.

122.    Anderson sexually assaulted Plaintiff John Doe (1968-1990)on campus during medical
examinations by penetrating John Doe (1968-1990)'s anus, fondling his genitals, with
significant groping of the testicle area and other non-consensual sexual touching.

123.    The "exams" conducted by Anderson on Plaintiff John Doe (1968-1990)went well
beyond the typical genital check one may experience during a physical and delved into
sexual harassment and assault.

124.    As a result of Anderson's sexual assault, Plaintiff John Doe (1968-1990)experienced

significant damages and severe trauma that detrimentally impacted his life on a day-to-day

basis.

125.    The damages to Plaintiff John Doe (1968-1990)include, but are not limited to pain and

suffering, embarrassment, loss of quality of life, loss of self-esteem, humiliation, and

emotional distress, which physically manifested into alcoholism, sexual problems, and

anxiety throughout his life.

126.    Plaintiff John Doe (1968-1990)'s damages were directly and proximately caused by

Defendants' actions/inactions stated above.

127.    As Anderson's deplorable actions have recently come to light and it's become clear that

Defendants actively concealed information about Anderson from the public and kept

Anderson employed despite knowledge that he was a sexual predator, Plaintiff John Doe

(1968-1990)has suffered additional damages including, but not limited to renewed shock,

embarrassment, and anxiety.


## VI.  FRAUDULENT CONCEALMENT

128.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-

127 above as if stated herein.

129.    MCL § 600.5855 tolls the statute of limitation for the claims contained in this Complaint

and states in relevant part that:

"If a person who is or may be liable for any claim fraudulent conceals the existence of the
claim or the identity of any person who is liable for the claim from the knowledge of the
person entitled to sue on the claim, the action may be commenced at any time within two
years after the person who is entitled to bring the action discovers, or should have

discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action will otherwise be barred by the period of limitations"

130.     Defenders through their employees, agents, representatives, as well as Anderson himself fraudulently concealed the existence of Plaintiff claims by: (1) concealing from Plaintiff that the medical examinations conducted by Anderson were actually sexual abuse/assault/molestation, (2) concealing from Plaintiff that Defendant had knowledge of Anderson sexual abuse and did nothing to prevent it,  (3) telling Plaintiff their procedures were normal and necessary, (4) publishing a statement that Anderson was a trustworthy and renowned doctor in a publication delivered to and read by university students, and (5) concealed from Plaintiff that U of M was aware of Anderson's abuse since at least 1968, thereby concealing U of M's identity as a person who is liable for the claim, as set forth below:

131.     Anderson made the following affirmative representations to Plaintiff:

   a.   Anderson's actions including, but not limited to, genital groping/manipulation and digital anal penetrations were normal, necessary, proper, appropriate, legitimate, and/or medically beneficial;

   b.   Anderson was not sexually assaulting Plaintiff;

   c.   Anderson's action including genital groping/manipulation and digital anal penetrations were necessary and proper medical treatments even though many patients, including Plaintiff, were healthy males between the ages of 17 and 25, with no reported issues related to genital and/or anus;

   d.   Plaintiff should not question and/or report Anderson to authorities;

e. Defendants through their employees, agents, representatives were aware of Anderson's conduct and continued to unnecessarily subject Plaintiff to Anderson's perverted examinations and believe such examinations were normal, necessary, proper, appropriate, legitimate, and/or medically beneficial; and

f. There was no possible cause of action against Andersen and/or Defendants.

132.    Anderson representations were false; and U of M's Public Safety Department recently investigated medical professional contact, which established that extended genital examinations and digital anal penetrations are almost never needed for any medical treatment of any issues normally experienced by college students.

133.    Anderson knew the above-mentioned representations were false. He engaged in the sexual assaults for his own sexual gratification and/or pleasure.

134.    Anderson knew genital examinations and digital anal penetration were not proper, appropriate, legitimate, and/or considered within standard of care by any position of any specialty, particularly as the patients including Plaintiff were healthy college aged men.

135.    Anderson's representations were material, in that Plaintiff would have stopped treating with Anderson had they known Anderson's representations were false.

136.    Anderson's representations were made with the intent of inducing reliance from Plaintiff as Anderson sought to continue sexually assaulting Plaintiff and others as evidenced by the fact that Anderson did, in fact, continue sexually assaulting Plaintiff and others while employed by U of M.

137.    Anderson's representations were also made with the intent of concealing from Plaintiff that they had a cause of action against U of M/Anderson.

138.    Plaintiff did, in fact, rely on Anderson's representations, which led them to continue treating with Anderson, however had they known Anderson's above-mentioned representations were false, Plaintiff would not have treated with Anderson.

139.    Anderson knew that Plaintiff were susceptible, and Plaintiff were in fact, especially susceptible to believing Anderson's misrepresentations because:

      a.  Plaintiff was naive men and when abused by Andersen;

      b.  Plaintiff had limited to no prior experience with genital/anal examinations and therefore it was impossible for them to determine whether the treatment received was sexual assault or a legitimate/proper medical treatment;

      c.  Anderson's representations were reinforced by his support/statements made from U of M representatives that Anderson was a trustworthy and reputable physician who was not to be questioned;

      d.  Anderson's representations were made within the scope of a pervasive culture at U of M's representatives and downplaying and normalizing Anderson's behavior;

      e.  Plaintiff were ignorant to Anderson sexual assault as there were no other medical professionals, parents, guardians, caregivers, or others in the room to observe Anderson in question his actions discover that his treatments were actually sexually abusive and his concealment from

other adult professionals deprive them of the opportunity for Plaintiff to realize they had been sexually assaulted and had a cause of action;

f.  Plaintiff was intimidated by Anderson's reputation and notoriety within the U of M community;

g.  Plaintiff also trusted Anderson due to his position within U of M and his notoriety and reputation;

h.  Plaintiff relied on U of M's statement that Anderson was a legitimate and trustworthy medical professional;

i.  Plaintiff was unaware and had no reason to believe they could potentially sue or had a cause of action because of lack of knowledge of the civil justice system and applicable remedies at law;

j.  U of M concealed allegations of Anderson's abuse from patients/students and the public at large and Plaintiff was therefore unaware of other students coming forward with allegations and had no reason to believe they had a possible lawsuit or cause of action;

k.  Plaintiff had not previously heard about allegations in the media regarding sexual assaults abuse by Anderson, as no such report existed; and

l.  Plaintiff was never told by Anderson that his actions during medical examinations were sexual in nature, unlike other victims of sexual abuse who are sometimes informed by their abusers that the conduct is sexual in nature and to not tell parents/others.

140.    Accordingly, Plaintiff did not know and could not have reasonably known, and were

reasonably unaware that he may have possible cause of action against Anderson and or U of

M until they read an article published on or about February 19th, 2020, regarding a complaint

filed with U of M's Police Department by a student abused by Anderson, at which point

Plaintiff became aware he too was a victim of Anderson's sexual abuse and that U of M

indirectly directly caused the abuse as they had knowledge that Anderson was a sexual

predator and failed to protect their students.

141.    Andersen, as a physician who Plaintiff trusted with their care, also breached a fiduciary

duty all to Plaintiff and therefore his failure to disclose material information was fraudulent.

142.    Anderson further concealed the fraud by affirmative acts designed and/or planned prevent

injury, so that he and Defendants would escape investigation, in that he:

      a.   Prevented other medical professionals, parents, guardians, and/or

caregivers from being in the room during examinations and treatments

of Plaintiff when he sexually assaulted Plaintiff; and

      b.   Did not abide by or follow the standard of care which requires another

medical professional, parent, coach, trainer, guardian, and/or caregiver

be in the room during the examination and treatment of patients.

143.    Anderson's representations caused Plaintiff injuries/damages related to (1) sexual

assaults; (2) discovering Anderson's uncomfortable treatments were in fact sexual assaults on

or about February 19, 2020; and (3) Discovery Plaintiff' beloved alma mater, you have him,

that they devoted their life to, in many respects, betrayed them by placing them in the care of

a known sexual predator.

144.    Plaintiff incorporates, by reference, the paragraphs above and below regarding damages suffered by Plaintiff as a result of U of M's responsibility for Anderson's sexual assaults, U of M's awareness and responsibility for Anderson's fraudulent misrepresentations about the sexual assaults, and/or U of M's own fraudulent misrepresentations.

145.    Anderson committed fraudulent concealment by concealing fraud with affirmative acts designed and or plan to prevent injury, so that he and defendants would escape investigation.

146.    At all times pertinent to his action, Anderson was an agent, apparent agent, servant, and employee of U of M and operated within the scope of his employment, and his negligence is imputed to U of M.

147.    Plaintiff was free of any contributory negligence at all times pertinent to this action.

148.    Defendants, through their employees, agents, and representatives, also made affirmative representations to Plaintiff including, but not limited to the following:

    a.    Anderson was a trustworthy and celebrated doctor within U of M's highly touted healthcare system as evidenced by their statements in Volume III of the President's Report of THE UNIVERSITY OF MICHIGAN for 1979-1980, which stated:  "The University Health Service staff wish to acknowledge the 11 years of leadership provided by Robert E Anderson, M.D.  In January of 1980, Anderson resigned as Director of the University Health Service to devote more time to his clinical field of urology/andrology and athletic medicine… his many contributions to health care are acknowledged… The University Health Service staff wish to thank Anderson for his years of leadership and to dedicate the Annual Report to him.

b. Anderson was to be trusted and not questioned, as his services were worthy of recognition by U of M dedicating the aforementioned annual report to him, even though U of M and its executives knew that Easthope had fired Anderson for his wrongful sexual conduct towards male students;

c. Anderson's genital groping and digital anal penetrations were normal, necessary, proper, appropriate, legitimate, and/or medically beneficial;

d. Anderson's genital groping and digital anal penetrations were normal, necessary, proper, appropriate, legitimate, and/or medically beneficial, and are such when the patient is a healthy male between the ages of 17 and 25, with no reported issues related to genitals and/or anus;

e. Plaintiff were required to be subjected to Anderson's treatments, as they were normal, necessary, proper, appropriate, legitimate, and or medically beneficial;

f. Anderson would treat their ailments and injuries in an ethical and competent manner, and therefore in a non-criminal manner;

g. Anderson was not sexually assaulting Plaintiff;

h. Plaintiff should not question and/or report the conduct to appropriate authorities;

i. These affirmative representations were reasserted each time Defendants sent a student to Anderson for treatment.  Each such referral was thus an affirmative representation that Anderson was competent, ethical, and

respectful of his students, and would otherwise "do no harm" to them; and

    j.   There was no possible cause of action against Anderson and or U of M.

149.   Defendants' representations were false. U of M's Public Safety Department's recent investigation involving contact with medical professionals establish that such genital examinations and digital, anal penetrations are almost never necessary for any physical and or medical treatment of any other issues typically experienced by college students.

150.   Defendants knew these representations were false, as they received several complaints regarding Anderson's sexual assault since at least, 1968, which was prior to Plaintiff arriving on campus.   Defendants also remove Anderson from his position as UHS Director in 1979 due to these allegations of sexual assault, thus showing U of M had knowledge the representations were false.

151.   Defendants made the material representations knowing they were false, or made such representations recklessly, without any knowledge of their truth, and in a positive assertion, despite having previously received similar complaints of Anderson's abuse from other students, and thus new Anderson's genital examinations and digital, anal penetration had been questioned in the past.

152.   Defendants' representations were material, so much so that had Plaintiff known the representations were false, they would have stopped seeking and/or treating with Anderson, immediately.

153.   Defendants' representations were made with the intent that Plaintiff would rely on them, such that U of M could therefore prevent Plaintiff from discovering they had a cause of action against Anderson.

154.    Plaintiff did in fact rely on Defendants' representations and the street it with Anderson and continue to do so; Have Plaintiff known Defendants' representations were false, Plaintiff would have never treated with Anderson.

155.    Defendants concealed this fraud through affirmative conduct designed and/or planned to prevent investigation and or inquire into the matter, and to prevent future discovery of fraud, as they:

      a.  Refused to terminate Anderson, thereby validating his conduct through his continue employment as a physician at one of the world's most esteemed institutions of higher education;

      b.  Affirmatively lied in written publications about Anderson "resigning" from UHS when, in truth, Anderson was fired, subsequently reinstated, and then demoted for his assaults on male students;

      c.  Hid Anderson's past, present, and future sexual abuse of men from the public;

      d.  Ignored, refused, and ultimately failed to inquire, investigate, and or question complaints made by students regarding Anderson's conduct, and thus fail to take action regarding Anderson's genital and anal examination; and

      e.  Did not create a policy to require adults, parents, chaperones, guardians, and or caregivers to be present during physical and or medical examinations of a minor or young student, by a treating physician.

156.    Defendants knew that Plaintiff were, and Plaintiff were in fact, particularly vulnerable to trusting, believing, and relying on Defendants' representations because:

a. Plaintiff was naive when abused by Anderson;

b. Defendants' representations were made within a pervasive culture forged by statements from U of M representatives, which claimed Anderson's treatments were necessary; That Anderson was competent and ethical, and that Anderson was to be trusted, never question;

c. Plaintiff had limited to no prior experience with legitimate, appropriately performed treatments involving genital and ordinal examinations, making it impossible for Plaintiff to identify Andrew's conduct as sexual assault, rather than a legitimate appropriate examination as believed;

d. Plaintiff had no possible way of knowing the wrongfulness of Anderson's conduct because there were no parents, guardians, caregivers, and or other medical professionals present during the genital and anal examinations to witness, question, and or discover that such procedures were indeed sexual assaults, and to thus inform Plaintiff they had been sexually assaulted and had a cause of action;

e. Based on neuroscience, the prefrontal cortex of the brain, which is used to make decisions and distinguish right-from-wrong, is not fully developed until near age twenty-five (25), And thus allows teenagers to make better judgments as the cortex matures over time;

f. Plaintiff were intimidated by Anderson's notoriety and reputation and therefore believed his representations;

g. Plaintiff relied on U of M's Administration and trusted Anderson due to his notoriety;

h. Plaintiff, as with limited to no knowledge or awareness of the civil justice system, had no reason to believe and lacked awareness of the possibility they could sue, or had a possible cause of action for civil redress;

i. Plaintiff had no reason to believe or to be aware they could sue, since Anderson and U of M actively concealed allegations of abuse brought by other students, thereby making Plaintiff unaware of these other claims and any possible actions to be had;

j. Plaintiff had never heard, by way of media, any allegations of sexual assault or misconduct levied against Anderson due to Anderson and U of M's concealment; and

k. Plaintiff were never told by Anderson himself that his genital and anal examinations were sexual in nature, unlike other victims of sexual abuse who are instructed such conduct against them is sexual and is thus to be hidden and concealed from their parents and others.

157. In accordance with the above, Plaintiff did not know, could not have reasonably known, and were reasonably unaware of any possible cause of action they had against Anderson and/or Defendants until on or about February 19, 2020.

158. On or about February 19, 2020, Plaintiff read an article discussing a complaint filed with U of M Police Department by a student accusing Anderson of sexual assault.

159. At this time, Plaintiff became aware they too have been victimized by Anderson's sexual abuse, and that defendants had directly and or indirectly caused the abuse by knowing

Anderson was a sexual predator, but chose not to stop, prevent, or deter the harm Anderson brought to students.

160.    Along with its affirmative, false representations, U of M officials, agents, and representatives spell to inform Plaintiff they were being sexually abused by Anderson; and that Anderson, as a predator, had a history of committing sexual assault under the guise of 'medical treatment.'

161.    As a fiduciary to Plaintiff, U of M had a duty to disclose such material information to Plaintiff, and its failure to do so thus constitutes a fraudulent act.

162.    At all times relevant to the action, Defendants employees, staff, managers, supervisors, and directors were indeed employees, agents, apparent agents, and or servants of Defendants, an operated within the scope of employment; their Fraudulent Concealment is thus imputed to Defendants.

163.    Defendants representations caused Plaintiff injuries relative to: (1) Anderson's repeated sexual assaults; (2) discovering that Anderson's treatment was in fact sexual assault, learned on or about February 19, 2020; and (3) knowledge that Plaintiff' university, to which they had devoted their lives through academics and athletics, had placed them in the hands of a known sexual predator, thus compromising their physical, mental, an emotional well-being.

164.    Plaintiff incorporates by reference the paragraphs above and below regarding damages suffered; an attribute such to U of M's responsibility for, and failure to address and/or stop, Anderson's sexual assaults; its awareness and responsibility for Anderson's fraudulent misrepresentations about his conduct/treatment; and its own fraudulent misrepresentations about the same, as well.

165.    Defendants have committed Fraudulent Concealment for the reasons set forth above and

below.

## VI. COUNTS AGAINST DEFENDANTS

### COUNT I:

### VIOLATION OF TITLE IX, EDUCATION AMENDMENTS ACT OF 1972
### 20 .S.C. §1681(A), ET SEQ.

166.    Plaintiff reallege and incorporate by reference the allegations contained herein to avoid

excess redundancy and for ease of reading by the Court, Plaintiff have outlined their damages

Paragraph 1-165 above as if stated herein.

167.    Title IX, 20 U.S.C. §1681(A) (hereafter "Title IX") assures that "no person in the United

States shall, on the basis of sex, be excluded from participation in, be denied the benefits of,

*or be subjected to discrimination under any education program or activity* receiving Federal

financial assistance …"

168.   Plaintiff is "persons" under Title IX's statutory language and thus warranted its protections.

169.   The U of M receives federal financial assistance for its education program and is, therefore, subject to Title IX statutory provisions.

170.   As a school subject to title IX, the U of M is required to investigate all matters of sexual violence including, but not limited to, sexual assault, abuse, and harassment, which extends over all academic programs belonging to the university, and any such conduct by its employees, students, and third parties.

171.   Anderson's conduct (i.e. sexual assault) occurred within, and was carried out under, a U of M medical program designed to provide medical treatment to students and or the public.

172.   Anderson's conduct toward Plaintiff, specifically his nonconsensual, unnecessary, and inappropriate manipulation of Plaintiff genitals and anuses, constitutes sex discrimination under title IX.

173.   Beginning in or around 1968, an appropriate person at U of M had actual knowledge of Anderson sexual assault, abuse, and/or molestation.

174.   In particular, Defendants were notified of Anderson sexual assault, abuse, and molestation by multiple male students in or around 1968, and then again in 1975 and 1979.

175.   Upon Plaintiff's information and belief, Defendants were also notified of Anderson's sexual assault, abuse, and molestation on multiple occasions after 1980, as well.

176.   Despite numerous complaints and notice of Anderson sexual assault, abuse, and molestation, Defendants failed to inquire into, investigate, and or stop Anderson wrongful conduct as required by Title IX.

177.    After each complaint in 1968, 1975, in 1979, Anderson continued to sexually assault, abuse, and molest male patients, including but not limited to Plaintiff.

178.    Accordingly, Defendants acted with deliberate indifference to known acts sexual assault, abuse, and molestation perpetrated on its premises, by:

        a.  Failing to investigate and or address allegations made by other victims of Anderson's sexual assault, abuse, and molestation, as required by title IX;

        b.  Failing to adequately investigate and or address complaints regarding Ander son's sexual assault, abuse, and molestation as required by Title IX.

        c.  Failing to execute corrective measures to prevent Anderson from violating, molesting, and or sexually abusing other students and individuals, including minor persons.

179.    Defendants acted with deliberate indifference, as their failure to respond to allegations of Anderson's sexual assault, abuse, and molestation was certainly unreasonable in light of the circumstances known to Defendants.

180.    Moreover, Defendants' response, or lack thereof, was clearly unreasonable as Anderson continued his sexual assaults of students, third parties, and Plaintiff until he Anderson left the U of M in 2003.

181.    Defendants' failure to promptly, appropriately, and necessarily investigate, respond to, and or remedy Anderson's sexual assaults after notice of such conduct subjected Plaintiff to continued harassment and a sexually hostile environment, effectively denied Plaintiff

"participation" in, "benefits" from, and access to educational opportunities at U of M, including Plaintiff' medical care.

## COUNT II:
## CIVIL RIGHTS VIOLATION, 42 U.S.C. §1983
## STATE CREATED DANGER

182.    Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1-181 above as if stated herein.

183.    At all relevant times, Defendants and Anderson as Defendants agent were acting under color of law, to wit, under color of statues, ordinances, regulations, policies, customs, and usage of the State of Michigan and or Defendants.

184.    According to the United States Constitution, the Due Process Clause of the 14th Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of the law."

185.    Notwithstanding this Constitutional protection, Defendants deliberately subjected Plaintiff to the care and or treatment of Anderson a known sexual predator regardless of Defendants knowledge that Anderson could and/or would cause damage to Plaintiff and other male patients by way of sexual assault.

186.    Defendants' conduct and culpability is blatant and extreme.

187.    As a result of Defendants' decision to not investigate the complaints beginning in 1968; to avoid corrective measures following Anderson's abuse; And to keep Anderson employ at U of M, Plaintiff became the foreseeable and certain victims, foreseeable sexual assaults.

188.    These decisions made by Defendants deprived Plaintiff of a safe campus, and constitute affirmative actions intend to cause and or increase the risk of harm done to Plaintiff, and any physical and emotional injuries, as well.

189.    Defendants have thus acted with willful disregard for Plaintiff safety, and have breached

their fiduciary duty To protect students, like Plaintiff, from harm by placing Plaintiff in the

hands of a sexual predator, and thereby allowing Anderson's sexual assaults to occur.

190.    Defendants therefore provided Anderson a known sexual predator to horrid opportunity

to sexually assault Plaintiff upon their failure to investigate complaints beginning in 1968, to

take corrective measures following Anderson's abuse, and to employ Anderson

notwithstanding knowledge of his wrongdoing.

### COUNT III
**CIVIL RIGHTS VIOLATION, 42 U.S.C. §1983**
***RIGHT TO BODILY INTERGRITY***

191.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraph 1-

190 above as if stated herein.

192.    The Due Process Clause of the 14th Amendment assures an individual the implied right

to bodily integrity, including the right of the individual to be free of sexual assault, abuse, or

molestation.

193.    Plaintiff enjoys those rights.

194.    The acts committed by Anderson as alleged herein constitute a violation of these well-

established, constitutionally protected rights of which a reasonable person and Defendants'

position should have known.

195.    At all relevant times, Defendants and Anderson as Defendants agent were acting under

color of law, to wit, under color of statues, ordinances, regulations, policies, customs, and

usage of the State of Michigan and/or Defendants.

196.    Pursuant to custom, policy, and/or practice, Defendants had, and continue to have, the

ultimate responsibility and authority to investigate complaints levied against their employees,

agents, and representatives, whether raised by persons including, but not limited to, university students, visitors, faculty, staff, or other employees, agents, and or representatives.

197.   Defendants failed to fulfill and execute this responsibility and authority, thus amounting to deliberate indifference.

198.   Accordingly, Defendants were required to prevent, deter, and or address all incidents regarding sexual assault, abuse, and or molestation occurring on their campus or premises, as is established by the aforementioned Constitutional provisions and Title IX.

199.   Defendants' failure to address the complaints of Anderson's many other patients lead to an undetermined number of persons being victimized by Anderson's sexual assault, abuse, molestation; such failures include Defendants lack of response to complaints against Anderson beginning in 1968, 1975, and 1979, as well.

200.   Defendants ultimately failed to adequately investigate the aforementioned complaints brought by Plaintiff and other similarly situated victims upon information of Anderson's sexual assaults which include Defendants' failure:

   a.   Not to place Anderson in a position of authority with access to a large population of naïve males, who would be unlikely to complain about Anderson's conduct;

   b.   To perform a thorough investigation into Anderson's improper conduct, upon receiving numerous complaints regarding the matter; and

   c.   To thoroughly review and investigate policies, practices, procedures, and training materials related to the circumstances surrounding the conduct of Anderson.

201.   Having failed to respond to reports of Anderson's sexual assault, abuse, and molestations in what is a clearly unreasonable manner, and thereby failing to prevent such conduct and harm to Plaintiff and other victims done by Anderson, Defendants have acted with deliberate indifference and are thus liable to Plaintiff 42 U.S.C. §1983.

202.   Moreover, Defendants tolerated, authorized, and or permitted a policy, procedure, practice, or custom that allow for the inadequate screening, insufficient supervision, and nonexistent discipline of Anderson, such that Anderson was allowed to violate the rights of those such as Plaintiff with impunity.

203.   Therefore, because Defendants' policy and practice in my exams contributed to Plaintiff harm by allowing Anderson's sexual assaults to continue, thereby depriving Plaintiff of their rights secured by the United States Constitution, Defendants are further liable to Plaintiff under 42 U.S.C. 1983§, as well.

### COUNT IV:
### CIVIL RIGHTS VIOLATION, 42 U.S.C. §1983
### *FAILURE TO TRAIN AND SUPERVISE*

204.   Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1-203  above as if stated herein.

205.   At all relevant times, Defendants and Anderson as Defendants agent for acting under color of law, to wit, under color of statues, ordinances, regulations, customs, and usages of the State of Michigan and/or Defendants.

206.   It is Defendants ultimate responsibility and authority to train and supervise their employees, agents, and or representatives, including faculty and staff such as Anderson, regarding duties owed toward students, colleagues, and visitors.

207.    These duties include specific responsibilities relative to identify, reporting, and or addressing sexual misconduct on Defendant campus or premises.

208.    Defendants failed to train and supervise their employees, agents and/or Representatives, including faculty and staff such as Anderson, regarding the following duties:

    a.  Perceive, report, and stop inappropriate sexual conduct on campus;

    b.  Provide readily, diligent, and ongoing supervision over students and other individuals, including Anderson;

    c.  report suspected incidents of sexual assault, abuse, or molestation;

    d.  establish an ensure the safety of all students, faculty, staff, and visitors to U of M campus and or premises;

    e.  Provide a safe environment for all students, faculty, staff, and visitors to U of M's premises, such that safe environment includes one from sexual harassment; and

    f.  Properly train faculty and staff to be aware of their individual duty to create and maintain a safe environment on the U of M campus and/or premises.

209.    Notwithstanding the importance of those duties, Defendants failed to adequately train faculty and staff, including athletic coaches, trainers, and medical personnel, on those duties this leading to Defendants' violations Plaintiff constitutional and statutory rights.

210.    This failure to train is the direct result of Defendants deliberate indifference towards the well-being of its public and its students, including their physical, mental, and emotional health.

211.    Defendants' failure is closely related to, or the actual cause of Plaintiff injuries.

212.    Defendants have thus deprived Plaintiff of their right to due process as provided by 14th Amendment of the United States Constitution and are thus in direct violation of 42 U.S.C §1983 liable to Plaintiff, accordingly.

## COUNT V:
## VIOLATION OF ELLIOT-ARSEN CIVIL RIGHTS ACT, M.C.L. §37.2101, ET SEQ.
### *SEX DISCRIMINATION*

213.    Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1-212 above as is stated herein.

214.    Michigan's Elliott Larson Civil Rights Act (or "the Act") provides that "the opportunity to obtain... the full and equal utilization of public accommodations, public services, and education facilities without discrimination because of… sex… is a civil right."

215.    The U of M is a place of public accommodation, public service, and educational facility as envisioned by the Act and the institutions to be covered.

216.    Accordingly, Plaintiff enjoyed the right to obtain and or achieve the full and equal utilization of U of M and any education programs, facilities, and/or services it had to offer.

217.    Anderson is a "person" as defined by the act.

218.    At all times relevant, Anderson was an agent of U of M.

219.    Plaintiff' sex was at least one substantial factor that motivated Anderson to select Plaintiff as victims of his sexual assault

220.    Therefore, had Plaintiff been female, they would not have been the target of Anderson's sexual assault and abuse.

221.    By allowing Anderson to access Plaintiff vis-a-vis medical treatment at a physician of the U of M campus, Defendants, through their agents, representatives, employees, including

Anderson, were predisposed to discriminate against Plaintiff based on sex, and acted in accordance with that predisposition.

222.    Similarly, by giving Anderson such access to Plaintiff as their treating physician, Defendants, through their agents, representatives, and employees, including Anderson, treated Plaintiff differently than similarly situated female students, to whom Anderson was not given access by U of M in the same unfettered manner to which he was given access to male patients on the unlawful; consideration of sex.

223.    Defendants thus subjected Plaintiff because of their sex to physical, sexual conduct that had the purpose or effect of denying Plaintiff the "full and equal utilization" of U of M educational program, and denied them similar access to any privileges, accommodations, and or services available to students at the U of M as well.

224.    Defendants have therefore deprived Plaintiff of a civil rights defined and entrenched in the act and are thus liable to Plaintiff accordingly.

### COUNT VI:
### VIOLATION OF MICHIGAN CONSTITUTION, ARTICLE 1, §17
### *SUBSTANTIVE DUE PROCESS – BODILY INTERGRITY*

225.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-224 above as if stated herein.

226.    The due process clause of the Michigan Constitution is coextensive with its federal counterpart, and thus provides that no person shall... be deprived of life, liberty, or property, without due process of law…

227.    Accordingly, Michigan's due process clause recognizes various substantive due process rights that protect the unenumerated, fundamental liberties of all citizens afforded by both federal and state constitutions.

228.   Through time, precedent has thus established that one such liberty protected by

Michigan's Due Process Clause is an individual's right to bodily integrity free from

unjustifiable government interference.

229.   This right is to be free from state occasion damage to bodily integrity, and that to be in

possession and control of one's own person, has been acknowledged by the United States

Supreme Court and the courts of Michigan as necessitating the most careful guard; and to be

kept sacred, and free from restraint an interference of others unless clear and unquestionable

law suggests otherwise.

230.   Violating this right involves an egregious, nonconsensual entry into the body constituting

an exercise of power without any legitimate government objective.

231.   Moreover, this violation must be so egregious an outrageous, that it can be fairly said to

shock the contemporary conscience.

232.   Defendants, pursuant to official policies, practices, and customs, violated Plaintiff's right

to bodily integrity by actions that include:

> a.  Failing to supervise, train, and or educate Anderson, Anderson's
>
> managers, and or Anderson's patients or their parents, so that in the
>
> absence of said supervision, training, an education, Anderson's sexual
>
> assault, abuse, and molestation could not be carried out;
>
> b.  Actively and purposefully concealing Anderson's horrid behavior; and
>
> c.  Failing to investigate student complaints beginning as early as 1968,
>
> including the subsequent failure to take corrective actions in response to
>
> Anderson's abuse, thus allowing Anderson to remain as a physician at U
>
> of M and have access to male students, despite knowledge that Anderson

was a sexual predator who victimized such persons under the guise of medical treatment.

233.    Therefore, Defendants' policies, practices, and customs process, and their correlating failures, gave Anderson ease of access to male students serving as potential victims, thereby exposing such patients, like Plaintiff, to Andersons abhorrent violations of bodily integrity so egregious, and so outrageous, that it shocks the conscious.

234.    The decisions and failures alleged herein ---  those which violated Plaintiff Due Process rights were made by Defendants high-level officials.

**COUNT VII:**
**VIOLATION OF MICHIGAN CONSTITUTION, ARTICLE 1, § 17**
*SUBSTANTIVE DUE PROCESS STATE CREATED DANGER*

235.    Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1-234 above as if stated herein.

236.    The Michigan Constitution affords the individual, including Plaintiff, a substantive due process right to avoid the risk of harm or danger created or increased by an affirmative act of the state.

237.    The right is therefore violated when the state: (1) engages in an affirmative act that either creates or increases the risk that a Plaintiff will be exposed to a violent act by third party; (2) that affirmative action does put a Plaintiff in a special risk danger, as opposed to a risk affecting the public at large; and (3) the state knew or should have known that its actions specifically in danger the Plaintiff.

238.    Defendants' actions, as an arm of the state/public state institution, constitute actions on behalf of the state.

239.   Defendants did create and increase the risk that Plaintiff would be exposed to an act of violence by a third party (i.e. Anderson) by conduct that includes: (1) permitting, condoning, and or reassigning Anderson within U of M medical program, such that Anderson was given access to male patients, and therefore sexually abused those patients with what he and Defendants considered medical treatment; And (2) concealing, ignoring, and or neglecting as product of policy, practice, or custom the knowledge that Anderson was continuing his unlawful, horrid behavior.

240.   These affirmative acts created or increased the risk that Plaintiff would be exposed to an act of violence or sexual assault by Anderson.

241.   This risk of violence or assault thus posed a special danger to Plaintiff and similarly situated individuals, because the states conduct subjected this group of males to the risk of Anderson's abhorrent behavior, despite the state's knowledge that and her son was manipulating the doctor patient relationship to perpetuate sexual violence against this group of persons.

242.   Accordingly, Defendants knew or should have known that these affirmative acts specifically endangered Plaintiff.

243.   Moreover, Defendants had established official policies, practices, and customs, that permitted, if not condoned and promoted Anderson's access to male patients/students for the purpose of inappropriately groping their genitals or digitally penetrating the anus during medical treatment.

244.   Those official policies, practices, and customs violated Plaintiff right to be free from a state created danger; The violation brought about by each of the following misconducts:

a. Failing to supervise, train, and or educate Anderson, and Anderson's managers, and or Anderson's patients or their parents (if the victim was a minor at the time of assault), so that in the absence of said supervision, training, and education, Andersons sexual assault, abuse, and molestation could not be carried out;

b. Actively and purposefully concealing Anderson's horrid behavior;

c. Failing to investigate student complaints beginning as early as 1968, including the subsequent failure to take corrective actions in response to Anderson's abuse, thus allowing Anderson to remain as a physician at the U of M and have access to male students, despite knowledge that Anderson was a sexual predator who victimized such persons under the guise of medical treatment; and

d. Not terminating Anderson when it became known he was a sexual predator.

245. Lastly, Defendants' policies, practices, and customs permitted, condoned, and ultimately made possible the reassignment of Anderson, thereby giving him Anderson a continuing access to young male students and third-party individuals, thereby threatening such persons and Plaintiff with invasions of bodily integrity so egregious an outrageous they shock the conscience.

246. Those decisions and failures above causing Defendants to shamefully violate Plaintiff constitutional rights, and their freedom to avoid and be free of particularized, state created risks, were made by Defendants' high-level officials.

## COUNT VIII:
## GROSS NEGLIGENCE

247.    Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1-
246 above as if stated herein.

248.    Defendants, owed to Plaintiff a duty to use due care in ensuring their safety and that a
similarly situated individuals, including safety and freedom from sexual assault, abuse, and
or molestation at the hands of Defendants employees, representatives, and or agents
including Anderson.

249.    However, Defendants breached this duty to Plaintiff by failing to adequately supervise
Anderson, even after notice of complaints regarding Andersons nonconsensual, sexual
touching and penetration performed during genital and anal examinations.

250.    Defendants' conduct was so reckless as to demonstrate a substantial lack of concern for
whether an injury would result to Plaintiff.

251.    Similarly, Anderson acting as Defendants employee, agent, or representative, owed
Plaintiff the same duty of due care when providing Plaintiff with medical treatment, as
created by the confidential doctor patient relationship between Plaintiff and himself.

252.    Anderson breached this duty of Plaintiff be and through his sexual assaults, abuses, and
molestations of Plaintiff, all having been committed in his (Andersons) scope of
employment, agency, and or representation of Defendants under the mask of medical
treatment.

253.    This conduct was so reckless as to demonstrate Anderson's substantial lack of concern for
whether an injury would result to Plaintiff.

254.   By the actions above, Defendants have shown a willful disregard to take the necessary precautions once needed to ensure Plaintiff safety from Anderson; and such disregard for the substantial risk Anderson polls to Plaintiff safety as well.

255.   Defendants had thus breached their duties owed to Plaintiff through the acts of gross negligence outlined above, each showing a reckless disregard for Plaintiff health, safety, and rights, and whether an injury would result therefrom, such that Defendants are liable to Plaintiff accordingly.

<u>**COUNT IX:**</u>
*NEGLIGENCE*

256.   Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-255 above as if stated herein.

257.   Defendants, owed Plaintiff a duty of ordinary care in ensuring their safety and that of similarly situated individuals, including safety and freedom from sexual assault, abuse, and or molestation at the hands of Defendants employees, representatives, and or agents, including Anderson.

258.   Defendants breached this duty of ordinary care owed to Plaintiff by the following conduct including, but not limited to:

    a.   Failing to adequately train and supervise Anderson; and

    b.   Failing to properly investigate, address, and or remedy Andersons abhorrent behavior despite employees, agents, and or representatives having notice in 1968, 1975, and 1979 by way of complaints that Anderson was engaged in conduct of a sexual nature related to his predatory, sexual examinations of male genitals and anuses.

46

259.    Accordingly, Defendants should have known, foreseen, and anticipated Andersons sexual abuse of male patients beginning and 1968, and onward.

260.    Similarly, Anderson, acting as Defendants employee, agent, or representative, owed Plaintiff the same duty of ordinary care when providing Plaintiff medical treatment, as created by the confidential doctor patient relationship between Plaintiff and himself.

261.    Anderson breached this duty to Plaintiff with each sexual assault, abuse, or molestation of Plaintiff, each incident being committed in his (Andersons) scope of employment, agency, and or representation of Defendants under the mask of "medical treatment."

## COUNT X:
### *VICARIOUS LIABILITY*

262.    Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1-261 above as if stated herein.

263.    The doctrine of vicarious liability is based on theory of indirect responsibility and creates by operation of law and agency relationship between the principle and its agent, such that the principle is held responsible for what its agent has done.

264.    In circumstances of employer-employee relationships, vicarious liability implies that an employer is responsible for the wrongs of his employee committed in the scope of employment.

265.    From approximately 1966 to 2003, Defendants employed and or held out Anderson as their employee, agent, and or representative.

266.    Accordingly, Defendants, as Anderson's principle employer, had the right, duty, and or ability to supervise Anderson's medical exams and Anderson himself so as to ensure the safety and well-being of Anderson's patients.

267.    However, Defendants too had an obvious and direct financial interest in allowing

Anderson to provide medical care for U of M and to prevent these allegations from tarnishing

the school's reputation.

268.    Defendants, as Anderson's principle/employer, are vicariously liable for Anderson's

sexual misconduct's alleged in the proceedings paragraphs, as such were performed during

and in furtherance of his employment, agency, and/or representation of Defendants, and were

subject to Defendants right, ability, or duty of control through and lacking system of

supervision.

## COUNT XI:
### *EXPRESS/IMPLIED AGENCY*

269.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-

268 above as if stated herein.

270.    Under agency law, a principle may be liable for and or bound by the acts of its agent if it

represents to a third party, either intentionally or negligently, that the agent is working on its

behalf, with the principle authority, and the third party reasonably realize on such

representations.

271.    An "agent," therefore, is someone authorized by actual or apparent authority to act on the

principle's behalf.

272.    Defendants intentionally and or negligently represented to Plaintiff that Anderson was

their employee, agent, and or representative, while simultaneously processing the right to

control Anderson's conduct by way of the principle-agent relationship.

273.  Based on Defendants representations, Plaintiff reasonably believed that Anderson was acting as an employee, agent, and or representative of Defendants, the principle employer, and, therefore, had the authority to act on Defendant's behalf and was Defendants' authority.

274.  317. Because of these reliance's, Plaintiff was injured as a result of Anderson's sexual assault, abuse, and molestation as described in the paragraphs above, each incident having a curd in the course of, and under apparent authorization by, Defendants as Anderson's principle/employer, on whom Plaintiff relied to provide them with medical professionals capable of reasonable skill and care.

## COUNT XII:
### *NEGLIGENT SUPERVISION*

275.  Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-274 above as if stated herein.

276.  Employers generally must take greater care to supervise employees whose past or current behavior suggest the employee poses a greater risk or harm to others.

277.  Defendant owed a duty to Plaintiff and other similarly situated males to reasonably supervise Anderson, their employee, agent, and or representative, during his employment, agency, and or representation, and while Anderson interacted with, or provided medical treatment to, Plaintiff and others.

278.  Defendants owed this duty as it was foreseeable that Anderson posed a risk to Plaintiff and males, as suggested by Defendants firing, reinstating, and demoting Anderson in 1980, at which time he had committed predatory acts against male patients reported to the university.

279.  Accordingly, Defendants, by and through their employees, agents, managers, and or assigns, knew or should reasonably have known that Anderson's prior conduct (i.e. his

abhorrent, sexual behavior) rendered Anderson an unfit employee, agent, and or representative requiring supervision given his threat to Plaintiff and males alike.

280.    Defendants, by allowing Anderson's horrid sexual assaults to occur and or continue, breached their duty to reasonably supervise Anderson, and through this breach allowed permitted Andersons acts, but allowed him to manipulate his position of power and authority over his patients.

281.    Anderson's sexual abuse occurred on U of M campus and/or premises, in the course scope of Anderson's employment, agency, and or representation of Defendants.

282.    In combination of the above, Defendants ultimately tolerated, permitted, and or authorized a policy, practice, procedure, or custom providing insufficient supervision of its employees, agents, and or representatives, including Anderson, and failed to adequately screen such individuals pursuant to this policy, practice, etc., thus allowing those like Anderson to violate the rights of others, like Plaintiff, with impunity.

## COUNT XIII:
### NEGLIGENT FAILURE TO WARN OR PROTECT

283.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-282 above as if stated herein.

284.    Beginning in or around 1968, Defendants had direct and or constructive knowledge of Andersons abhorrent, dangerous conduct as reported in complaints to the university.

285.    Defendants therefore knew or should have known that Anderson had committed sexual assault, abuse, and or molestation of Plaintiff and other male patients, or was continuing to engage in such conduct.

286.    Moreover, and with knowledge of Anderson's conduct, Defendants knew or should have known that Anderson posed a risk of harm to Plaintiff and other similarly situated males.

287.    Accordingly, Defendants owed a duty to warn and/or protect Plaintiff and other individuals against the risk of injury Anderson posed.

288.    Defendants further owed a duty to disclose this knowledge and information of Anderson's conduct and or risk pursuant to the trusting, fiduciary doctor patient relationship that existed between Anderson as Defendants employee, agent, and or representative, and Plaintiff.

289.    Defendants breached this duty by failing to warn and or protect Plaintiff from Anderson, which includes but is not limited to:

        a.  Failing to respond to allegations of Anderson sexual assault, abuse, and molestation;

        b.  Failing to act on evidence of Anderson sexual assault, abuse, and molestation; And

        c.  Failing to investigate, adjudicate, and or terminate Anderson's employment with U of M prior to his treatment of Plaintiff and other similarly situated individuals.

290.    Furthermore, Defendants failed to adequately screen, counsel, and or discipline Anderson for any and all physical and/or mental conditions rendering him unfit to execute his duties and responsibilities as a physician at a university, resulting in violations of Plaintiff rights.

291.    Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Anderson's sexual assault, abuse, and molestation.

**COUNT XIV:**
***NEGLIGENT FAILURE TO TRAIN OR EDUCATE***

292.   Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-334 above as if stated herein.

293.   Defendants owed to Plaintiff and other men/minors the duty to implement reasonable protective measures intended to protect Plaintiff and these persons from Anderson's sexual assault, abuse, and or molestations.

294.   Defendants, however, failed to take such reasonable protective steps, such as failing to properly train and or educate Plaintiff and other similarly situated males to avoid this risk of harm.

295.   Among other things, Defendants failed to implement reasonable safety measures to:

a.   Prevent acts of sexual assault, abuse, and or molestation;

b.   Avoid Andersons unsupervised contact with Plaintiff and other males, and positions that allowed Anderson to victimize these persons;

c.   Educate students, like Plaintiff, on reporting and or preventing unwanted touching, penetration, and otherwise sexual and advance from authority figures, considering U of M knowingly allowed Anderson, its employee, agent, and or representative and a sexual predator, contact with the students; and

d.   Training and/or educating U of M employees to recognize and be aware of improper touching, considering the U of M knowingly allowed Anderson, its employee, agent, and or representative and a sexual predator, contact with male patients.

**COUNT XV:**
***NEGLIGENT RETENTION***

296.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs1-295 above as if stated herein.

297.    Defendants owed a duty to Plaintiff and other similarly situated males to exercise due care whenever hiring, retaining, screening, checking, regulating, monitoring, credentialing, and/or supervising its employees, agents, and/or representatives.

298.    Defendants breached this duty, and were negligent in retaining Anderson as an employee, agent, and or representative of U of M after failing to adequately investigate, report, and or address complaints regarding his sexual assaults, abuse, and molestations of which Defendants knew, and reasonably should have known.

299.    Moreover, Defendants were negligent in retaining Anderson after having discovered, or after having the reasonable opportunity to discover, Andersons abhorrent conduct as an indication of sexual, criminal propensities.

300.    Had Defendants terminated Anderson's employment Plaintiff injuries would not have occurred.

301.    Defendants' failure to act with due care allow Anderson access to Plaintiff and other similar similarly situated individuals, and thus allowed for Anderson's sexual assault, abuse, and molestation of Plaintiff and these persons.

302.    Accordingly, Defendants negligent hiring, retaining, screening, checking, regulating, monitoring, credentialing, and or supervising of its employees, agents, and or representatives, including Anderson, created a foreseeable risk of harm to Plaintiff and others.

**COUNT XVI:**
***INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS***

303. Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-302 above as if stated herein.

304. A defendant can be liable for the intentional infliction of emotional distress for extreme and outrageous conduct intended to cause or which recklessly causes a Plaintiff to experience severe emotional distress.

305. This "extreme and outrageous conduct" is any act that defies the bounds of decency and is utterly intolerable by a civilized society, thereby causing emotional distress so severe that no reasonable man could be expected to endure it.

306. Defendants, by and through the allegations above, allowed Anderson to hold employment that allowed his access to and sexual assault of Plaintiff and other men, notwithstanding Defendants' knowledge of Anderson's conduct as deduced from student complaints beginning in 1968.

307. This type of conduct is extreme and outrageous.

308. Moreover, Defendants actively touted Anderson's worth of high esteem and acclaimed, thereby encouraging Plaintiff and other males to trust Anderson, and to refrain from questioning his medical treatments or motives, such as genital and anal examinations.

309. Accordingly, a reasonable person would not expect Defendants' tolerance, permission, and or authorization of Anderson sexual assault, abuse, and/or molestation, nor Defendants' admiration of Anderson in lieu of his horrid sexual propensities.

310. Furthermore, a reasonable person would not expect Defendants to neglect, forego, and/or find themselves incapable of supervising Anderson and/or preventing his sexual misconducts against Plaintiff and other similar suggested males, as did occur.

311.    Defendant's conduct was therefore intentionally designed or recklessly executed to allow for Anderson's sexual abuse, resulting in Plaintiff' severe emotional distress.

## COUNT XVII:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

312.    Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1-311 above as if stated herein.

313.    Defendants acted with negligence by providing Anderson with employment that gave him access, opportunity, and the ultimate ability to sexually assault, abuse, and or molest Plaintiff and other similarly patients.

314.    Defendant's negligence was the proximate cause of Anderson's sexual assault, abuse, and or molestation of Plaintiff.

315.    Plaintiff have thus suffered damage directly related to Anderson's sexual assaults as well as damages related to discovery they were and are victims of Anderson's sexual misconduct tolerated, permitted, and or authorized by their alma mater, U of M.

316.    The combination of these events, including Defendants own actions and Anderson's sexual assaults, naturally and probably resulted in Plaintiff's emotional distress.

317.    The combination of these events, including Defendants own actions and Anderson's sexual assaults, did in fact result in Plaintiff emotional distress.

## COUNT XVIII:
## FRAUD AND MISREPRESENTATION

318.    Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1-317 above as if stated herein.

319.     Between 1968 and 2003, Defendants represented to Plaintiff and the public that Anderson was a competent, ethical, and safe physician employed by U of M.

320.     Defendants further represented that Anderson, by and through his competence and ethics, was a trustworthy physician of high morals, and that Plaintiff need not worry about Anderson doing them any harm.

321.     Defendants' representations were false.

322.     Between 1968 and 1979, defendants received multiple complaints regarding Anderson sexual assaults committed on male patients during genital and anal examinations.

323.     Defendants thus had knowledge that Anderson was committing and continuing to commit sexual assault, abuse, and molestation against Plaintiff and other similarly situated individuals.

324.     Although Defendants had knowledge of Anderson's conduct, they failed to investigate, remedy, or address it in any way, but instead held Anderson out as a competent and safe physician.

325.     In fact, Defendants misrepresented Anderson's firing as UHS Director in 1979 as a resignation via written oral communications to U of M community and public; And yet, Defendants had knowledge that Anderson was instead fired, reinstated, and demoted as a result of his sexual, predatory conduct toward  Plaintiff and other college males alike.

326.     Defendants made these representations with the intent that Plaintiff and other males rely on them when seeking treatment from Anderson.

327.     Plaintiff did in fact rely on Defendants fraudulent assertations and continue to seek treatment from Anderson, despite Defendants first-hand knowledge of the risk posed to Plaintiff because of Anderson's criminal sexual propensities.

328.    Plaintiff was therefore subjected to Andersons sexual assault, abuse, and or molestation as a result of Defendants fraudulent representations regarding Anderson's fitness as a medical professional.

## XVIII. PLAINTIFF' DAMAGES

329.    On or around February 19, 2020, news outlets reported that multiple former students from U of M had come forward with complaints of sexual abuse committed by a former university staff member.

330.    That staff member was Doctor Robert Anderson, accused of committing multiple sexual assaults while treating students at U of M or its UHS, which Anderson guised as routine medical treatments and or examinations.

331.    At this time Plaintiff learned that Anderson who had treated them in the past was a serial sexual predator.

332.    Pointedly, Plaintiff damages arise from two distinct and exclusive harms:

a. Plaintiff revelation that Anderson's prior treatment which involved what were initially perceived as bizarre, strange acts, were in fact criminal sexual conduct's motivated by Anderson's abhorrent intent to assault, abuse, and or molest students, thereby making Plaintiff one of Anderson's innocent victims; and

b. Plaintiff revelation that U of M, to whom Plaintiff had given their transformative years and allowed to become a part of their lives, had led them into the hands of a sexual predator, whom U of M twistedly guised as a competent, concerned physician worthy of continued treatment and care.

333.   Since these revelations, Plaintiff has experienced and/or continue to experience shame, shock, humiliation, embarrassment, loss of self-esteem, disgrace, and emotional distress including the physical manifestation thereof.

334.   Moreover, discovering the harm Anderson committed distribute and or continues to disturb Plaintiff's sense of self-worth and identity, leading to Plaintiff anxiety, depression, and emotional suffering.

335.   Additional harms and/or damages to Plaintiff include:

   a.   The feeling of betrayal upon learning U of M chose not to protect them from Anderson's known, anticipated abuse;

   b.   The feeling of betrayal upon learning U of M led them to Anderson's care, notwithstanding Defendants' knowledge that Anderson was a predator;

   c.   The worries and anxieties prompted by Plaintiff fear that family or friends may learn Plaintiff too are victims of Anderson's horrid behavior;

   d.   Anxieties regarding the possibility of future and/or continued interactions with U of M following its storied betrayal of Plaintiff; and

   e.   Anxieties associated with Plaintiff uncertainty as to how these harms will manifest themselves in Plaintiff immediate and distant future.

336.   Plaintiff's revelations have forced him to relive the trauma of what they now know to be Anderson sexual assaults, thereby damaging Plaintiff emotional and psychological health upon this understanding that U of M knowingly exposed them and others to Anderson's abuse during his employment from 1966 to 2003.

337.    As a direct and or proximate cause of Defendants conduct, Plaintiff has suffered, and will continue to suffer, from the discomfort, shock, embarrassment, humiliation, grief, disgrace, loss of self-esteem, pain of mind and body, and emotional distress and the physical manifestations thereof associated with Anderson sexual assault, abuse, and/or molestation, as may appear throughout discovery and trial.

338.    These injuries to Plaintiff for twenty-two (22) years amount to a series of  irreparable harms commonly suffered by victims of sexual assault, abuse, and or molested by a trusted authority figure, such as a doctor.

339.    Symptoms of male sexual abuse deriving from those injuries include, but are not limited to, sexual dysfunction; the inability to engage in close relationships with others; Confusion about one sexual identity; an embarrassment and depression, all of which has lasted for decades with Plaintiff.

340.    The above injuries and symptoms are especially harmful when the perpetrator responsible is known and trusted by the victim.

341.    When sexual abuse is perpetrated by a medical provider, patients often fail to understand the abuse occurred because of the trust in provider and the provider's authority over the victim, thereby causing, injuries of emotional distress, humiliation, and the inability to trust providers or the medical field, generally.

342.    Accordingly, and as a result of all of the actions and or inactions of Defendants described above, Plaintiff have, and will continue to suffer, from irreparable harms caused by Defendants failure in handling of Anderson's sexual misconduct.

343.    WHEREFORE, Plaintiff JOHN DOE (1968-1990) by and through his attorneys, request that this Honorable Court and finder-of-fact enter judgment in Plaintiff's favor against

Defendants on all counts and claims above, in an amount consistent with the proofs put on at

trial and with an award against Defendants for all damages arising out of law, equity, and fact

where applicable, including but not limited to:

344.    COMPENSATORY DAMAGES in an amount deemed fair and just by the court and

fact-finder under the circumstances, including but not limited to medical expenses, loss of

earnings, mental anguish, anxiety, humiliation, and embarrassment, loss of social pleasure

and enjoyment, and the repeated violation of Plaintiff constitutional, federal, and state rights,

as well as other damages to be proved;

345.    PUNITIVE AND/OR EXEMPLARY DAMAGES in an amount deemed fair and just by

the Court and trier of fact;

346.    REASONABLE ATTORNEY FEES, INTERESTS, AND COSTS; and

347.    OTHER DECLARATORY, EQUITABLE, AND/OR INJUNCTIVE RELIEF including,

but not limited to, Defendants' institutional reform implemented by taking measures that

ensure Defendants' accountability to provide for the safety and protection of patients and

individuals, as this Court finds equitable and just.


Respectfully submitted,


/s/ Timothy E. McDaniel
Timothy E. McDaniel (P36336)
Darryl W. Eason (P54991)
1601 Briarwood Circle, Ste. 400
Ann Arbor, MI 48108
Phone: (734) 223-7412
Phone: (313) 561-8600
Email: attytimcdaniel@gmail.com
Email: dwe014@gmail.com
*Attorneys for Plaintiff*

Dated: January 21, 2022

## **JURY DEMAND**

Plaintiff, by and through his attorneys, hereby demand a trial by jury on all claims set forth herein.

Respectfully submitted,


<u>/s/ Timothy E. McDaniel</u>
Timothy E. McDaniel (P36336)
Darryl W. Eason (P54991)
1601 Briarwood Circle, Ste. 400
Ann Arbor, MI 48108
Phone: (734) 223-7412
Phone: (313) 561-8600
Email: <u>attytimcdaniel@gmail.com</u>
Email: <u>dwe014@gmail.com</u>
*Attorneys for Plaintiff*


Dated: January 21, 2022